**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

ELENI TSERPELIS A/K/A ELENI LAGOS,

Plaintiff,

- against -

DECHERT LLP, MCDERMOTT WILL & SCHULTE, and MICHAEL SHEEHAN,

Defendants.

---------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Eleni Tserpelis a/k/a Eleni Lagos, by her attorneys, Filippatos PLLC and Mesidor PLLC, hereby alleges against Defendants Dechert LLP ("Dechert"), McDermott Will & Schulte ("McDermott"), and Michael J. Sheehan ("Sheehan," and together, the "Defendants") as follows:

## NATURE OF THE CASE

1. Plaintiff, Eleni Lagos, having courageously stood up for herself by initiating related litigation, *see Eleni Tserpelis A/K/A Eleni Lagos V. BDO USA PC, Matthew Becker, Mathew Demong, Steven Winter, Catherine Moy, And Lucy Cordon,* 1:25-cv-05613-JAV-JW in a brave and selfless attempt to hold her former employer, BDO USA, accountable for callously sabotaging her career after her son developed a sudden, incapacitating medical condition, she became the victim of yet another vicious bully—***defense counsel,*** Defendant, Michael Sheehan, Esq.

2. This defamation action exposes the ugly truth regarding not only a lawyer who was willing to far exceed the scope of zealous representation and the attendant litigation privilege in order to malign an opposing party, but also the two law firms -- Defendants Dechert LLP and McDermott Will & Schulte -- with knowledge of this tortious scheme who ratified the misconduct.

3. In an effort to distract from the fact that their clients' defenses have no merit, Defendants, through their tortious machinations and defamatory statements, have irreparably injured Plaintiff's professional reputation and exacerbated her already extreme emotional distress.

4. While attorneys and law firms both have a duty to represent their clients vigorously, they also have an affirmative duty not to make false, malicious statements to the media regarding opposing litigants.

5. However, in the instant matter, Defendants have shamefully done just that, by causing to be published such defamatory statements regarding Plaintiff while the parties have been engaged in related litigation before this Court. *See Tserpelis v. BDO USA PC et al.*, (1:25-cv-05613 (JAV)(JEW)) (hereinafter, the "BDO Litigation").

6. For example, on September 9, 2025, Michael Sheehan made the following statements to third party Law360 for the purpose of publication regarding the BDO Litigation: "Any action taken by BDO with respect to Ms. Lagos's partnership was wholly unrelated to the leave she was provided and due solely to her performance failures as a partner," Sheehan said. ***"It is unfortunate that she is now using her son's medical condition as a cover for her own performance issues and to draw highly inflammatory and untrue inferences about why she was terminated from the firm"*** (hereinafter referred to as the "Defamatory Statement").

7. Sheehan's statement goes far beyond a comment about a former employee's work performance. Instead, the Defamatory Statement was a shamefully malicious, and inaccurate, statement intended to damage Plaintiff's professional reputation and punish her for having the courage to hold her former employer, BDO, accountable.

8. This lawsuit seeks to vindicate Plaintiff's hard-earned reputation and hold Dechert, McDermott, and Sheehan accountable for their non-privileged and harmful lies.

9. Plaintiff seeks compensatory damages for Defendants' substantial harm to her professional and personal reputation, punitive damages to deter similar conduct, and injunctive relief to prevent further defamation.

10. What follows exposes the full scope of Defendants' defamatory campaign, so the financial services industry and Ms. Lagos's future colleagues will know the truth about not only Ms. Lagos's exceptional loyalty to BDO, but her outstanding reputation, and the tortious conduct BDO's counsel engaged in to distract from BDO's meritless defenses.

## PARTIES, JURISDICTION, AND VENUE

11. At all times relevant hereto, Plaintiff was and is a resident of the State of New York.

12. At all times relevant hereto, Defendant Dechert LLP was and is a global law firm, with its principal place of business in Philadelphia County, Pennsylvania.

13. At all times relevant hereto, Defendant McDermott Will & Schulte was and is a global law firm, with its principal place of business in Cook County, Illinois.

14. Defendant Michael Sheehan is an employment litigator who was previously employed as a Partner at McDermott and is now employed as a Partner at Dechert. Upon information and belief, Defendant Sheehan is an individual residing in Cook County, Illinois.

15. Upon information and belief, Defendant Sheehan officially became a partner at Dechert no later than January 2026 when 20 partners from Defendant McDermott became partners at Defendant Dechert[1].

---

[1] *See e.g.* Law firm Dechert hires 20-partner team from rival McDermott | Reuters, https://www.reuters.com/legal/legalindustry/law-firm-dechert-hires-20-partner-team-rival-mcdermott-2026-01-23/, last accessed Sept. 8, 2026; Dechert Raids McDermott With 20-Partner Team as It Re-Enters Chicago and Targets Texas, https://www.lawfuel.com/dechert-raids-mcdermott-with-20partner-team/, last accessed Sept. 8, 2026; Dechert Attracts Large Partner Group, Opening New Offices in Chicago and Dallas, https://www.dechert.com/knowledge/news/2026/1/dechert-expands--adding-leading-u-s--complex-litigation-practice.html/, last accessed Sept. 8, 2026.

16. The partner acquisition "highlights Dechert's emphasis on leadership and long-term planning."[2]

17. Further, upon information and belief, Defendant Sheehan's discussions with Defendant Dechert regarding the cases he would bring with him from Defendant McDermott to Defendant Dechert, including but not limited to the BDO Litigation, began before September 9, 2025, when the Defamatory Statement was published.

18. Upon information and belief, Defendant Dechert engaged in due diligence regarding both Defendant Sheehan and the cases he intended to bring with him from Defendant McDermott to Defendant Dechert. Defendant Sheehan's Defamatory Statement is easily discoverable via a cursory internet search. Further, it typically takes an extended period of time, sometimes more than six months[3], to finalize a lateral partnership move of an attorney from one law firm to another. Therefore, upon information and belief, Defendant Dechert had knowledge of the Defamatory Statement before finalizing its partnership agreement with Defendant Sheehan.,

19. New York Partnership Law provides that: "Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act." N.Y. P'SHIP LAW § 24.

---

[2] *See* Dechert Hires 20 Partners From McDermott in Major Expansion - JDJournal Blog, https://www.jdjournal.com/2026/01/23/dechert-hires-20-partners-from-mcdermott-in-major-expansion/, last accessed Sept. 8, 2026.

[3] *See* How Long Does a Lateral Attorney Move Take? Complete Timeline | Fluency Legal, https://fluencylegal.com/blog/lateral-attorney-move-timeline-how-long, last accessed Sept. 8, 2026.

20. Further, the partnership is bound to make good the loss:

> (1) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and
>
> (2) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership. N.Y. P'SHIP LAW § 25.

21. Upon information and belief, Defendant Sheehan made the Defamatory Statement in the ordinary course of business of both partnerships—Defendant McDermott and Defendant Dechert—while he was still officially a partner at Defendant McDermott and while he acted with the apparent authority of Defendant Dechert. As such, Defendant Dechert and Defendant McDermott may be found jointly liable for Defendant Sheehan's Defamatory Statement. *See Dev. Specialists, Inc. v. Dechert LLP*, 532 B.R. 473, 484 (S.D.N.Y. 2015).

22. Upon information and belief, both Defendant McDermott and Defendant Dechert had knowledge of Defendant Sheehan's Defamatory Statement and ratified same.

23. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

24. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district, where the parties' prior litigation is pending and where the defamatory statements were intended to have their effect.

## RELATED CASE FILING AND STANDARD OF REVIEW

25. The Southern District of New York's related-case rule is directed to the efficient and just administration of actions that materially overlap. In determining whether actions are related, the Court considers whether: (A) the actions concern the same or substantially similar parties, property, transactions, or events; (B) substantial factual overlap exists; (C) the parties could be subjected to conflicting orders; and (D) absent a related-case determination, the actions would entail substantial duplication of effort and expense, delay, or undue burden on the Court, parties, or witnesses. *Kumaran v. Vision Fin. Mkts., LLC*, No. 1:20-cv-3871-GHW, 2022 U.S. Dist. LEXIS 219969, at *13 n.3 (S.D.N.Y. Dec. 6, 2022)

26. These considerations favor related-case treatment where assigning the matters together would serve the interests of justice and efficiency. Relevant considerations include substantial savings of judicial resources, the just, efficient, and economical conduct of the actions, the parties' and witnesses' convenience, common parties or witnesses, and the prospect of coordinated discovery or trial.

27. Related-case treatment is particularly appropriate where it will avoid duplicative discovery, overlapping pretrial proceedings, inconsistent rulings, and unnecessary expense.

28. This action is related to *Eleni Tserpelis A/K/A Eleni Lagos V. BDO USA PC, Matthew Becker, Mathew Demong, Steven Winter, Catherine Moy, And Lucy Cordon,* No. 1:25-cv-05613-JAV-JW, pending before the Honorable Jeannette A. Vargas because both actions concern the same or substantially similar parties, property, transactions, or events; involve substantial factual overlap concerning Ms. Lagos' termination; and present a material risk of duplicative proceedings, inconsistent orders, or unnecessary burden if managed separately. Related-case treatment will therefore promote the efficient and economical resolution of both matters.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Lawsuit Against BDO

29. In her pending BDO Litigation, Plaintiff has claims against BDO USA PC and individual defendants Matthew Becker, Chief Executive Officer; Mathew DeMong, National Managing Principal of Tax; Steven Winter, Tax Managing Principal; Catherine Moy, Chief People Officer; and Lucy Cordon, National Director of Benefits (together, the "BDO Litigation Defendants") for breach of contract, retaliation, and discrimination (gender/sex, associational disability, and caregiver status) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the New York State Human Rights Law, New York State Executive Law, § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et. seq.* ("NYCHRL"). *See* Am. Compl. at ¶ 23.

30. In Plaintiff's Amended Complaint, filed on July 25, 2025, she alleges Defendants' callous and calculated sabotage of her illustrious career after her life was abruptly turned upside down by her son's devastating and incapacitating medical condition. More specifically, Ms. Lagos's Amended Complaint notes that the BDO Litigation Defendants: "[s]ystematically crushed the career of an exceptional and decorated tax 'partner'—first slashing her annual compensation by approximately $100,000 while she sat helpless at her son's pediatric ICU bedside after his catastrophic brain hemorrhage, then cutting her monthly draw nearly in half without warning and setting impossible revenue targets for her, and ultimately firing her just months before she was due to receive millions of dollars from an employee stock ownership plan ("ESOP") transaction. *See* Am. Compl. at ¶ 4

31. Plaintiff, in her BDO Litigation, seeks damages based on the BDO Litigation Defendants' calculated destruction of her career, which unfolded not because of the pretextual performance issues Defendants claimed, but because Plaintiff needed to take FMLA-protected leave to care for her suddenly disabled son. In fact, during her employment with BDO, Plaintiff consistently exceeded her revenue targets for many years.

32. Despite Plaintiff's diligent efforts to secure comparable employment, she has been unable to do so since she was terminated from BDO in March 2023. Defendants' defamatory statements have undoubtedly further undermined Plaintiff's employment prospects since September 2025.

**B. <u>BDO's Counsel's Defamatory Statements</u>**

33. On or about September 9, 2025, Michael Sheehan made the following statements to third party Law360 for the purpose of publication regarding the BDO Litigation, and which was ultimately published in an article entitled, "BDO Seeks to Ditch Bulk of Ex-Partners $75M Bias Suit": "Any action taken by BDO with respect to Ms. Lagos's partnership was wholly unrelated to the leave she was provided and due solely to her performance failures as a partner," Sheehan said. ***"It is unfortunate that she is now using her son's medical condition as a cover for her own performance issues and to draw highly inflammatory and untrue inferences about why she was terminated from the firm."***[4]

34. This Defamatory Statement was published online on September 9, 2025 and, as of the date of this filing, is still available to the public.

---

[4] *See* BDO Seeks To Ditch Bulk Of Ex-Partner's $75M Bias Suit - Law360 Pulse https://www.law360.com/pulse/articles/2385677/bdo-seeks-to-ditch-bulk-of-ex-partner-s-75m-bias-suit, last accessed Sept. 8, 2026.

35. This Defamatory Statement not only falsely characterized Plaintiff as someone who was terminated from her job for performance issues, it falsely but intentionally imputed to Plaintiff fraud, dishonesty, and misconduct.

36. Each of these characterizations is demonstrably false and maliciously calculated to damage Plaintiff's reputation in the financial services industry.

37. In addition to destroying Plaintiff's reputation, these statements have contributed to Plaintiff's inability to secure comparable employment after her unlawful termination from BDO.

**C. Defendant Dechert's History of Allegations**

38. Shortly after the Defamatory Statement was made, it was announced that Defendant Sheehan was moving from Defendant McDermott to Defendant Dechert.[5]

39. Defendant Sheehan brought the BDO Litigation with him from Defendant McDermott to Defendant Dechert.

40. Notably, this is not the first time that Defendant Dechert acquired a group of partners from another law firm who were engaged in alleged tortious conduct during their transition.

41. In 2015, this Court denied efforts by Defendant Dechert to dismiss claims against it based on conduct its partners engaged in while they were still technically employed at their old firm, before moving to Defendant Dechert, but after receiving offers from Defendant Dechert. *See Dev. Specialists, Inc. v. Dechert LLP*, 532 B.R. 473, 483 (S.D.N.Y. 2015).

42. Not only were those claims against Defendant Dechert not dismissed, but extensive discovery was permitted regarding the timing and content of the partnership negotiations and everything that occurred **before** the partners officially joined Defendant Dechert. *Id.* at 848.

---

[5] *See Law firm Dechert hires 20-partner team from rival McDermott | Reuters*, last accessed September 8, 2026.

43. Furthermore, this is not the first time Defendant Dechert has been accused of unlawful conduct, including but not limited to improper comments to the press.

44. In fact, Defendant Dechert has previously been accused of improperly billing clients, creating work in order to "generate millions…in extra fees," and making improper comments to the press.[6]

45. In March 2022, a partner at Dechert, Neil Gerrard, was found to be the "instigator" of various improper leaks to the press, including the horrific statement that he was in "***rape mode***" and planned to "***screw those fuckers***" while attempting to go after a former client of Defendant Dechert for fees.[7]

46. Despite this, Defendant Dechert has allowed their partners to act unlawfully for years, and Ms. Lagos is only the most recent victim.

## FIRST CAUSE OF ACTION
***Defamation Per Se***

47. Plaintiff repeats the preceding allegations of this Complaint and incorporates them herein by reference.

48. In making the Defamatory Statement contained and referenced in paragraph 20, Defendants purported to be making statements of fact.

49. Each of the statements by Defendants referenced in paragraph 20 was made to third parties, false and defamatory, neither privileged nor authorized, and constitutes defamation *per se*. Defendants intended to cause members of the public and in Plaintiff's professional environment to believe that Plaintiff was immoral, dishonest, and unfit to perform the duties of her profession.

---

[6] *See The bad apple that cost Dechert £47m, https://www.cityam.com/the-bad-apple-that-cost-dechert-47m/* last accessed September 8, 2026.

[7] *See The bad apple that cost Dechert £47m, https://www.cityam.com/the-bad-apple-that-cost-dechert-47m/* last accessed September 8, 2026.

50. Defendants acted with actual malice in making the statements because they knew the statements were false or subjectively entertained serious doubt as to their truth. Defendants' statements were made to the media, and their republication was foreseeable.

51. Defendants' false and defamatory statements about Plaintiff tended to expose Plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of her in the minds of right-thinking persons and deprive her of friendly association in society. In the communities in which she works and performs, Plaintiff has been injured in her reputation and good standing and has been held up to ridicule and contempt.

52. By reason of the foregoing, Plaintiff has suffered general and special damages in an amount to be determined at trial; including damage to Plaintiff's reputation and standing in her community; shame, mortification, embarrassment, humiliation, damage to peace of mind, emotional distress, and emotional harm; as well as injury in occupation, unemployment, inability to find comparable employment, derailed career trajectory, and other harms.

53. Plaintiff is entitled to general damages for loss of reputation, shame, mortification, and hurt feelings; to special damages to compensate Plaintiff for damages to Plaintiff's profession or occupation; and to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful practices prohibited by law and must be permanently enjoined from engaging in such lawful practices;

B. Awarding general and special damages to Plaintiff resulting from Defendants' unlawful conduct, and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful conduct;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful conduct.

**MONETARY DEMAND**

Plaintiff seeks an award in this case, including general and special damages, as well as punitive damages, in excess of Seventy-Five Million Dollars ($75,000,000).

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: September 9, 2026
New York, New York

Respectfully submitted,

**FILIPPATOS PLLC**

By: ~//s//~
Parisis G. Filippatos
Erica T. Healey-Kagan
425 Madison Ave, Suite 1502
New York, New York 10017
T: 212-202-0234
pgf@filippatoslaw.com
ehealeykagan@filippatoslaw.com

*Counsel for Plaintiff*

**MESIDOR PLLC**

By: ~//s//~
Marjorie Mesidor
110 East 25th Street
New York, New York 10010
T: 212-930-6010
mm@marjoriemesidor.com

*Counsel for Plaintiff*